Richard J. Rabin (RR 0037)
Lori J. Pennay (LP 8856)
Akin Gump Strauss Hauer & Feld, LLP
590 Madison Avenue
New York, NY 10022
Telephone:  (212) 872-1000

Attorneys for Defendant Tishman Speyer Properties, L.P.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARTHUR LaMARCH,<br><br>                    Plaintiff,<br><br>        v.<br><br>TISHMAN SPEYER PROPERTIES, L.P.,<br><br>                    Defendant. | )<br>)<br>)<br>)<br>)   No. CV-03-5246 (CBA)(RLM)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Richard J. Rabin
Lori J. Pennay
Akin, Gump, Strauss, Hauer & Feld, L.L.P.
590 Madison Avenue
New York, New York 10022
(212) 872-1000

Attorneys for Defendant

Dated: New York, New York
        July 15, 2005

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................................iii

INDEX OF EXHIBITS ...................................................................................................................v

INTRODUCTION.............................................................................................................................1

NATURE OF THE CASE ................................................................................................................2

    I.     TSP, ROCKEFELLER CENTER, AND THE HIRING OF PLAINTIFF ...............2

    II.    TSP'S RESTRUCTURING OF OPERATIONS ......................................................3

    III.   PLAINTIFF'S TERMINATION.................................................................................5

    IV.   PLAINTIFF'S EMPLOYMENT WITH MAX CAPITAL .....................................6

ARGUMENT....................................................................................................................................6

    I.     PLAINTIFF'S DISCRIMINATION TERMINATION CLAIM FAILS AS A
         MATTER OF LAW ..................................................................................................7

         A.     PLAINTIFF CANNOT PROVE A *PRIMA FACIE* CASE...........................7

               1.     Plaintiff Cannot Establish Interference
                       With Ambiguous Offhand Remark…………………………………..8

               2.     Regional Property Manager Position……………………………10

               3.     Other Employees Terminated by TSP……………………………12

         B.     PLAINTIFF HAS NOT DEMONSTRATED THAT TSP'S BASIS FOR
              DISCHARGE WAS PRETEXTUAL .........................................................14

    II.    PLAINTIFF CANNOT DEMONSTRATE A HOSTILE WORK
         ENVIRONMENT ....................................................................................................15

         A.     NO SHOWING OF HOSTILE WORK ENVIRONMENT .......................15

         B.     PLAINTIFF'S CLAIMS ARE BARRED ..................................................16

III.   PLAINTIFF'S CLAIM FOR RETALIATION FAILS
       AS A MATTER OF LAW ........................................................................................17

       A.     NO "RETALIATORY" CONDUCT EXISTS...........................................17

       B.     NO ADVERSE EMPLOYMENT ACTION EXISTS ...............................19

IV.    PLAINTIFF CANNOT RECOVER PUNITIVE, LIQUIDATED,
       COMPENSATORY DAMAGES ........................................................................21

CONCLUSION............................................................................................................23

TABLE OF AUTHORITIES

CASES

*Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456 (2d Cir. 2001) ...............................7, 8

*Brink v. Union Carbide Corp.*, 41 F. Supp. 2d 406 (S.D.N.Y. 1999)................................10

*Brown v. Coach Stores*, 163 F.3d 706 (2d Cir. 1998)....................................................10, 11

*Burlington Indus., v. Ellerth*, 524 U.S. 742 (1998)..............................................................16

*Burroughs v. Chase Manhattan Bank, N.A.*, No. 01 Civ. 1929 (BSJ), 2005 WL.
    497790 (S.D.N.Y. March 2, 2005)....................................................................................9

*Campbell v. Alliance Nat'l Inc.*, 107 F. Supp. 2d 234 (S.D.N.Y. 2000) .............................7

*Clark County Sch. Dist. v. Breeden*, 532 U.S. 268 (2001)..................................................18

*Coleman v. Prudential Relocation*, 975 F. Supp. 234 (W.D.N.Y. 1997) .........................10

*Distasio v. Perkin Elmer Corp.*, 157 F.3d 55 (2d Cir. 1998)...............................................7

*Farias v. Instructional Sys., Inc.*, 259 F.3d 91 (2d Cir. 2001) ..........................................21

*Fears v. Heritage Ctrs.*, No. 02-CV-639S, 2004 WL. 1824126 (W.D.N.Y. Aug.
    15, 2004).........................................................................................................................9

*Gadsden v. Jones Lang LaSalle Americas, Inc.*, 210 F. Supp. 2d 430 (S.D.N.Y.
    2002) .............................................................................................................................17

*Gorman-Bakos v. Cornell Co-op Extension.*, 252 F.3d 545 (2d Cir. 2001) .....................18

*Haskell v. Kaman Corp.*, 743 F.2d 113 (2d Cir. 1984)................................................12, 13

*Hayut v. State Univ. of N.Y.*, 352 F.3d 733 (2d Cir. 2003) ...............................................15

*Internationl Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977) ............................12

*June v. Town of Westfield*, 370 F.3d 255 (2d Cir. 2004) .....................................................6

*Kolstad v. Am. Dental Assoc.*, 527 U.S. 526 (1999)..........................................................21

*Mars v. Serv. Now for Adult Persons*, 305 F. Supp. 2d 207 (E.D.N.Y. 2004) ...................9

*Pitre v. Western Elec. Co.*, 843 F.2d 1262 (10th Cir. 1988), *aff'd in part & rev'd
    in part by* 975 F.2d. 100 (10th Cir. 1992)....................................................................13

*Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426 (2d Cir. 1999)............19

*Roge v. NYP Holdings, Inc.*, 257 F.3d 164 (2d Cir. 2001) ...........................................8, 14

*Ruggieri v. Harrington*, 146 F. Supp. 2d 202 (E.D.N.Y. 2001) .......................................19

*Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155 (2d Cir. 1999)................17

*Schnabel v. Abramson*, 232 F.3d 83 (2d Cir. 2000).......................................................7, 10

*Seltzer v. Dresdner Kleinwort Wasserstein, Inc.*, 356 F. Supp. 2d 288 (S.D.N.Y.
    2005) .............................................................................................................................10

*Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87 (2d Cir. 2001)...............................9

*Tarshis v. Riese Org.*, 211 F.3d 30 (2d Cir. 2000), *dismissed in part by* 195 F.
    Supp. 2d 518 (S.D.N.Y. 2002), *aff'd by* 66 Fed. Appx. 238 (2003) .......................8, 14

*Terry v. Ashcroft*, 336 F.3d 128 (2d Cir. 2003) ......................................................7, 17, 18

*Tomney v. Int'l Ctr. for the Disabled*, 357 F. Supp. 2d 721 (S.D.N.Y. 2005) ...................14

*Townsend v. Exchange Ins. Co.*, 196 F. Supp. 2d 300 (W.D.N.Y. 2002)...........................21

*Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985) ...........................................22

*Velasquez v. Goldwater Mem. Hosp.*, 88 F. Supp. 2d 257 (S.D.N.Y. 2000) .....................18

*Wayne v. Principi*, No. 01-CV-941 (GWG), 2004 WL. 389009 (S.D.N.Y. Mar. 3,
    2004) ..............................................................................................................................9

*Whitten v. Cross Garage Corp.*, No. 00 Civ. 5333 (JSM), 2003 WL. 21744088
(S.D.N.Y. July 9, 2003) ............................................................................................22

## STATUTES

Fed. R. Civ. P. 56(c) ...........................................................................................................6

## INDEX OF EXHIBITS

AFFIDAVIT OF LORI J. PENNAY

Exhibit A:  Amended Complaint dated June 28, 2005
Exhibit B:  Excerpts From Transcript of Deposition of Arthur LaMarch
Exhibit C:  Excerpts From Transcript of Deposition of Michael Norton
Exhibit D:  Excerpts From Transcript of Deposition of Thomas Madden
Exhibit E:  Plaintiff's résumé as submitted to TSP
Exhibit F:  Director of Administration job description
Exhibit G:  Plaintiff's 2001 Performance Evaluation
Exhibit H:  New York Property Manager job description
Exhibit I:   October 2002 New York Property Manager job description
Exhibit J:  Plaintiff's résumé as submitted to Max Capital
Exhibit K:  Resume of Sean Sullivan
Exhibit L:  Sean Sullivan New Hire form
Exhibit M:  Plaintiff's Termination Form
Exhibit N:  Plaintiff's Information Release Form for Max Capital
Exhibit O:  Plaintiff's 2002 Employee Evaluation
Exhibit P:  Plaintiff's 2003 Employee Evaluation
Exhibit Q:  Excerpts From Transcript of January 5, 2005 hearing
Exhibit R:  Excerpts From Transcript of Deposition of Robert Speyer
Exhibit S:  Excerpts from the TSP handbooks
Exhibit T:  Excerpts of TSP's anti-harassment training policy and
                 Plaintiff's certificate of completion
Exhibit U:  Affidavit of Michael Butler
Exhibit V:  Email dated November 1, 2000 from Plaintiff to Thomas Madden
Exhibit W:  Order of Justice Mann, dated October 28, 2004
Exhibit X:  News articles relating to Adam Hochfelder and Monday Properties
Exhibit Y:  Monday Properties' web page
Exhibit Z:  Letter from Plaintiff's counsel to TSP's counsel, dated April 30, 2004

Tishman Speyer Properties, L.P. ("TSP" or the "Company") respectfully submits this Memorandum of Law in support of its motion for summary judgment.

## INTRODUCTION

Plaintiff Arthur LaMarch has claimed that TSP discriminated and retaliated against him on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). *See* Exhibit ("Exh.") A (Amended Complaint ("Am. Compl.")) ¶ 1.[1] He seeks, *inter alia*, punitive, compensatory, and liquidated damages. *See id.* at Prayer for Relief.

As shown below, no evidence supports Plaintiff's claims, and TSP is entitled to judgment as a matter of law.

The discriminatory discharge claim fails because undisputed evidence demonstrates that Plaintiff's job was eliminated as part of a broader consolidation in TSP's New York City real estate portfolio. Plaintiff has not identified any evidence that his termination occurred under circumstances that give rise to an inference of discrimination, and TSP has demonstrated a legitimate, non-discriminatory basis for his discharge.

Plaintiff's "hostile work environment" claim fails because Plaintiff has not shown any "severe" or "pervasive" conduct giving rise to such a claim. Moreover, Plaintiff failed to avail himself of TSP's well-established policies and procedures to report and redress discrimination and harassment in the workplace. Under these circumstances, Plaintiff's hostile work environment claim cannot go forward.

---

[1] For purposes of this memorandum of law, all references to "Exh." refer to the exhibits attached to the Affirmation of Lori J. Pennay, sworn to on July 15, 2005.

Plaintiff's retaliation claim is also deficient. Plaintiff neither has shown any act of "retaliation" nor has suffered any adverse employment action as required by law.

For all these reasons, as more fully set forth below, summary judgment should be awarded to TSP, and all of Plaintiff's claims should be dismissed.

NATURE OF THE CASE

## I.  TSP, ROCKEFELLER CENTER, AND THE HIRING OF PLAINTIFF

TSP is a leading international owner and developer of real estate. *See* Exh. A ¶ 11. It owns and/or manages Rockefeller Center (which itself encompasses ten separate buildings) and eight other New York City properties, as well as other properties all over the world. *See id.*; Exh. B (LaMarch Transcript ("Tr.")) at 46-47; Exh. C (Norton Tr.) at 17.

Plaintiff was hired as Director of Administration/Rockefeller Center in September 1996 by Tom Madden, who at the time was TSP's Executive Director of Rockefeller Center. *See* Exh. A ¶¶ 14, 17; Exh. B (LaMarch Tr.) at 44-46, 165; Exh. D (Madden Tr.) at 120-21. Mr. Madden had worked with Plaintiff previously at TSP and recruited him for the Director of Administration/Rockefeller Center position.[2] *See* Exh. A ¶ 14; Exh. B (LaMarch Tr.) at 44-46; Exh. D (Madden Tr.) at 120-21. At the time he was hired, Plaintiff was 50 years old. *See* Exh. A ¶ 17; Exh. B (LaMarch Tr.) at 115.

As Director of Administration/Rockefeller Center, Plaintiff's primary duties were administrative in nature. They included overseeing the day-to-day operations of Rockefeller Center, managing tenant relations, and handling the administrative functions of the property. *See* Exh. B (LaMarch Tr.) at 118-19; Exh. C (Norton Tr.) at 8; Exh. F (job description). Plaintiff

---

[2] Plaintiff previously worked for TSP as a controller in the TSP accounting department from 1979-1992. *See* Exh. B (LaMarch Tr.) at 33-34; Exh. E (LaMarch résumé).

also had responsibility for certain, largely basic, financial matters, such as ensuring that rent was collected, tracking expenses, and ensuring compliance with the property budget established by senior management. *See* Exh. B (LaMarch Tr.) at 122-23; Exh. F.

Moreover, Plaintiff was a satisfactory—but not extraordinary—performer. In his last full year at TSP, he received a performance evaluation rating of "full and complete," but not "exceptional." *See* Exh. A ¶ 19; Exh. G (2001 performance evaluation).

## II.   TSP'S RESTRUCTURING OF OPERATIONS

In April 2001, TSP acquired an increased ownership share in Rockefeller Center. *See* Exh. B (LaMarch Tr.) at 65. Led by Michael Norton, Senior Director of Property Management/U.S., TSP believed that efficiencies could be gained by integrating Rockefeller Center into the decisions and planning of the greater New York portfolio. *See* Exh. C (Norton Tr.) at 18-19; Exh. D (Madden Tr.) at 7, 12, 24. TSP thus made Rockefeller Center part of the entire New York portfolio. *See* Exh. B (LaMarch Tr.) at 179-81; Exh. D (Madden Tr.) at 7, 12. It created a new Senior Director level position – New York Regional Property Manager – to, *inter alia*, oversee all property management matters at all New York Properties. *See* Exh. A ¶ 23; Exh. B (LaMarch Tr.) at 171-72; Exh. C (Norton Tr.) at 19-21, 123; Exh. D (Madden Tr.) at 7, 12, 16.

At around the same time, Mr. Norton also developed and implemented a new management model across TSP's property management group, primarily emphasizing financial and asset management skills. *See* Exh. C (Norton Tr.) at 20-21. This model required managers to view buildings as investments and to use financial and lease management strategies to maximize the short- and long-term return on those investments. *See id.*; Exh. D (Madden Tr.) at 25. The New York Regional Property Manager position thus was not administrative in nature,

and rather focused on creating value at each property. *See* Exh. C (Norton Tr.) at 39; Exh. D (Madden Tr.) at 15-16, 61-62; Exh. H (job description created for Equinox search); Exh. I (TSP job description). The New York Regional Property Manager position would require, among other things, a college degree (with a strong preference for a Masters degree) and a solid background in asset management and strategy. *See* Exhs. H and I. Key qualifications for the position would include a deep financial background with Wall Street-type investment experience, including investment analysis of individual properties and portfolios, and creation of portfolio value through assessment of capital plans and financials. *See* Exh. C (Norton Tr.) at 39-42; Exh. D (Madden Tr.) at 16, 61; Exhs. H and I.

Although Plaintiff was well aware of the ongoing search for the new New York Regional Property Manager, Plaintiff never applied for the position. *See* Exh. B (LaMarch Tr.) at 175, 176, 196, 197; Exh. C (Norton Tr.) at 49; Exh. D (Madden Tr.) at 19. Plaintiff also did not have the requisite education and background for the job. Contrary to Plaintiff's representations to both TSP and his subsequent employer that he holds a Bachelor of Arts degree from City University of New York, Plaintiff testified under oath that he does *not,* in fact, have a college, much less a Masters, degree. *See* Exh. B (LaMarch Tr.) at 14, 196; Exh. E (LaMarch résumé submitted to TSP); Exh. J (LaMarch résumé submitted to Max Capital). He never has worked at an investment firm or in a job primarily emphasizing asset management or asset analysis, and has no experience raising capital for investments. *See* Exh. B (LaMarch Tr.) at 207-09. Instead, his background has primarily focused on the administrative and operational side of property management. *See* Exh. B (LaMarch Tr.) at 45-46 (listing his skills as "accounting, budgeting knowledge of properties, administrative"); Exh. D (Madden Tr.) at 12.

4

After a six-month search by a retained recruiting firm, TSP finally found a candidate with the appropriate qualifications for the New York Regional Property Manager position. *See* Exh. C (Norton Tr.) at 118. The candidate had a Masters degree in real estate, a background of asset management on Wall Street, and significant experience in creating value for real estate investment portfolios. *See* Exh. D (Madden Tr.) at 44, 47, 51; Exh. K (Sullivan résumé). This candidate, Sean Sullivan, was hired as the New York Regional Property Manager in June 2002. *See* Exh. A ¶ 30; Exh. L (Sullivan new hire form).

III.    PLAINTIFF'S TERMINATION

With the creation of the New York Regional Property Manager position, Plaintiff's Director of Administration/Rockefeller Center position no longer was necessary and thus was eliminated. *See* Exh. A ¶ 23 (the New York Regional Property Manager position "subsumed Mr. LaMarch's then existing position"); Exh. B (LaMarch Tr.) at 171-72; Exh. C (Norton Tr.) at 123, 205-06; Exh. D (Madden Tr.) at 7, 11, 15-16. Some of Plaintiff's job functions were redistributed to the new New York Regional Property Manager. *See* Exh. D (Madden Tr.) at 60-61. Plaintiff thus was terminated effective May 31, 2002. *See* Exh. A ¶ 27, Exh. M.

Plaintiff's discharge clearly is the result of a job elimination. His TSP "Termination Form" indicates "job elimination" as the reason for his discharge. *See* Exh. M. Plaintiff himself acknowledged this reason for his discharge when applying for a new position at his current employer. In completing background check forms in connection with his new employment, Plaintiff listed "downsizing" as the reason he had left TSP. *See* Exh. N. At his deposition, Plaintiff also admitted that the New York Regional Property Manager position "subsumed" his position. Exh. B (LaMarch Tr.) at 171-72. Plaintiff's position at TSP never was replaced, such

5

that there remains no "Director of Administration" of Rockefeller Center to this day. *See* Exh. D (Madden Tr.) at 26.

IV.     PLAINTIFF'S EMPLOYMENT WITH MAX CAPITAL

Within four months of his termination from TSP, Plaintiff obtained a new position as Vice President of Operations for Max Capital, another New York area real estate and property management firm. *See* Exh. B (LaMarch Tr.) at 80, 88. Like his prior position at TSP, Plaintiff's duties at Max Capital are administrative and operational in nature, and do not include asset management. *See id.* at 88, 109.

Plaintiff testified that his employment there has been "smooth sailing." *See id.* at 111-14, 254-56. Plaintiff received a $60,000 discretionary bonus in December 2003 and a substantial salary increase—from $190,000 to $206,000—in January 2004. *See id.* at 518-19. Furthermore, as of November 17, 2003, Plaintiff's last two performance appraisals indicate he clearly was in good standing at his new employer. *See* Exhs. O (2002 evaluation) and P (2003 evaluation stating, "overall I am extremely happy and comfortable with Art's performance"). Plaintiff admitted that he remained in good standing at his deposition on April 21, 2004 and again at a hearing before this Court on January 5, 2005. *See* Exh. B (LaMarch Tr.) at 111-14; Exh. Q (1/5/05 Hearing Tr.) at 17-18.

ARGUMENT

Fed. R. Civ. P. 56(c) mandates entry of summary judgment where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also June v. Town of Westfield*, 370 F.3d 255, 257 (2d Cir. 2004). To withstand a motion for summary judgment, a plaintiff must offer "concrete evidence

6

from which a reasonable juror could return a verdict in [his] favor." *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 62 (2d Cir. 1998).  Short of this, a plaintiff's claim must be dismissed.

As set forth in detail below, TSP is entitled to judgment as a matter of law on each of Plaintiff's claims.

## I.  PLAINTIFF'S DISCRIMINATORY TERMINATION CLAIM FAILS AS A MATTER OF LAW

Plaintiff's claim of discriminatory discharge fails for two independent reasons.  First, Plaintiff cannot meet his burden of establishing a *prima face* case of discrimination.  Second, even if he could, TSP has demonstrated through uncontested evidence that Plaintiff was fired for a legitimate, non-discriminatory reason:  a job elimination in connection with an ongoing consolidation of TSP's New York property management staff.  Because Plaintiff was fired for a valid business reason, and not because of his age, his claim fails.

### A.  PLAINTIFF CANNOT PROVE A *PRIMA FACIE* CASE

In order to prove a claim for age discrimination, a plaintiff first must establish a *prima facie* case.[3]  To do so, he must show, *inter alia*, that a discharge "occurred under circumstances giving rise to an inference of discrimination." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003); *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000).  Where a plaintiff presents no evidence that creates an inference of discrimination, his claim must fail. *See, e.g., Campbell v. Alliance Nat'l Inc.*, 107 F. Supp. 2d 234, 247 (S.D.N.Y. 2000) (plaintiff failed to prove *prima facie* case where "there [was] no evidence in the record to support an inference of discrimination").

---

[3] Age discrimination claims under the ADEA, the NYSHRL, and the NYCHRL are governed by the same standards. *See Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("[A]ge discrimination suits brought under the [NYSHRL] and [NYCHRL] are subject to the same analysis as claims brought under the ADEA.").

Here, it is undisputed that Plaintiff lost his job as a result of a job elimination. Plaintiff's termination form specifically states "job elimination" as the reason for his discharge, and Plaintiff admitted this fact in his application materials to his new employer, Max Capital. *See* Exh. M; Exh. N (listing "downsizing" as the reason for leaving last job). *See also* Exh. D (Madden Tr.) at 7, 11, 15-16. Moreover, Plaintiff acknowledged the elimination of his Director of Administration position at his deposition and in his Amended Complaint. *See* Exh. A ¶ 23; Exh. B (LaMarch Tr.) at 171-72. A job elimination under these circumstances is not discriminatory, and does not raise an inference of discrimination. *See Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 169 (2d Cir. 2001) (affirming dismissal of an ADEA claim where employer had eliminated plaintiff's job as part of restructuring); *Tarshis v. Riese Org.*, 211 F.3d 30, 37 (2d Cir. 2000), *dismissed in part,* 195 F. Supp. 2d 518 (S.D.N.Y. 2002), *aff'd,* 66 Fed. Appx. 238 (2003) ("recogniz[ing] that a . . . restructuring that results in an elimination of jobs is a legitimate reason for dismissing an employee").

The various efforts Plaintiff makes to establish an inference of discrimination fail as a matter of law.

### 1.    Plaintiff Cannot Establish Inference With Ambiguous Offhand Remark

Plaintiff fails to establish a *prima facie* case through a stray remark he alleges to have been made by Tom Madden more than five months before his discharge, supposedly questioning whether Plaintiff had "the gas to continue." Exh. A ¶ 20. Even assuming Mr. Madden made such a comment,[4] it does not support an inference of discrimination.

The law is well settled that a plaintiff cannot establish a *prima facie* case of discrimination through a stray remark. *See Abdu-Brisson*, 239 F.3d at 468 ("stray remarks of a

---

[4] Mr. Madden testified that he does not remember ever making such a remark. *See* Exh. D (Madden Tr.) at 30.

8

decision-maker, without more, cannot prove a claim of employment discrimination"); *Mars v. Serv. Now for Adult Persons*, 305 F. Supp. 2d 207, 214 (E.D.N.Y. 2004) (same). This is particularly true when the alleged remark at issue occurred months before the employment decision at issue. *See, e.g., Fears v. Heritage Ctrs.*, No. 02-CV-639S, 2004 WL 1824126, at *3-*4 (W.D.N.Y. Aug. 15, 2004) (isolated remark eight months before termination does not constitute discrimination); *Wayne v. Principi*, No. 01-CV-941 (GWG), 2004 WL 389009, at *11-*12 (S.D.N.Y. Mar. 3, 2004) (supervisor's sketch of plaintiff with aging features and comment about older women, made *one* month before her termination, did not prove *prima facie* case). The remark at issue here allegedly occurred in December 2001, before Mr. Madden even knew Plaintiff's position would be eliminated, and at least five months before Plaintiff's termination. *See* Exh. A ¶ 20; Exh. D (Madden Tr.) at 9.

Moreover, vague or ambiguous comments of the type alleged here are not actionable as a matter of law. The alleged remark at issue—"running out of gas"—does not make reference to Plaintiff's age and is ambiguous at best. *See* Exh. A ¶ 20. The case law is clear that such a remark cannot create an inference of discrimination.[5] *See, e.g., Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 92 n. 2 (2d Cir. 2001) (age-neutral comments failed to prove *prima facie* case); *Mars*, 305 F. Supp. 2d at 214 (supervisor's comment that "some people [are] complaining about old men" was non-actionable); *Burroughs v. Chase Manhattan Bank, N.A.*, No. 01 Civ. 1929 (BSJ), 2005 WL 497790 (S.D.N.Y. March 2, 2005) (comment that someone reminded plaintiff of her mother was insufficient to create *prima facie* claim). Plaintiff admitted that, other than this single alleged remark, no one at TSP made a discriminatory comment about his age or

---

[5] "Running out of gas" could refer to any number of things wholly unrelated to age, including feeling tired, losing interest, feeling lethargic, becoming depressed, etc. Such an ambiguous and isolated age-neutral remark is clearly insufficient to create an inference of discrimination. Moreover, Mr. Madden is not alleged to have made specific reference to Plaintiff's age, or to have told Plaintiff that he was too old for the position.

discriminated against him otherwise in his more than 18 years of employment. *See* Exh. B
(LaMarch Tr.) at 165-66.

Finally, it is undisputed that the person who allegedly made the stray remark – Mr.
Madden – *recruited and hired Plaintiff when Plaintiff was 50 years old*. *See* Exh. A ¶¶ 14, 17;
Exh. B (LaMarch Tr.) at 44-46, 165; Exh. D (Madden Tr.) at 120-21. Courts have refused to
draw an inference of discrimination under such circumstances. *See Schnabel*, 232 F.3d at 91
(granting summary judgment, finding it "highly relevant" the alleged discriminator was the
"same man who had hired [the plaintiff] three years earlier, when [the plaintiff] already was 60
years old"); *Seltzer v. Dresdner Kleinwort Wasserstein, Inc.*, 356 F. Supp. 2d 288 (S.D.N.Y.
2005) (granting summary judgment; fact that plaintiff was hired when she was 64 "strongly
undercuts the claim of discrimination"); *Coleman v. Prudential Relocation*, 975 F. Supp. 234,
241 (W.D.N.Y. 1997) (granting summary judgment, finding it unlikely that the decision-maker
who hired the plaintiff when she was 51 years old, "suddenly developed an aversion to older
people" after she began working there).

>            2.      Regional Property Manager Position

Plaintiff also has sought to generate an inference of discrimination through TSP's hiring
of another individual (Sean Sullivan) for its new position of New York Regional Property
Manager. This effort also fails.

As an initial matter – and as Plaintiff admits – Plaintiff did not apply for this new
position. *See* Exh. B (LaMarch Tr.) at 175, 176. This fact in and of itself precludes the
establishment of a *prima facie* case. *See Brown v. Coach Stores*, 163 F.3d 706, 709 (2d Cir.
1998) (in order to prove a *prima facie* case of discriminatory failure to promote, plaintiff must
show that he "applied and was qualified for" the position); *Brink v. Union Carbide Corp.*, 41 F.

Supp. 2d 406, 413 (S.D.N.Y. 1999) (no *prima facie* case where plaintiff never applied for position).

Moreover, Plaintiff clearly lacked the qualifications for the New York Regional Property Manager position. *See, e.g., Brown*, 163 F.3d at 709 (no *prima facie* case where plaintiff failed to established that she was qualified for the position). As is clear from the job description compiled by TSP's search firm, TSP was seeking a candidate with a graduate school education and a strong background in asset management and investment analysis. *See* Exh. H; *see also* Exh. I. The desired candidate would have a deep financial background with investment firm experience, as well as experience creating portfolio value through assessment of capital plans and financials. *See* Exh. C (Norton Tr.) at 39-42; Exh. D (Madden Tr.) at 16, 61.

Plaintiff simply did not have these credentials. He had never worked for an investment firm or in a job primarily emphasizing asset management or investment analysis, and had no experience raising capital for investments. *See* Exh. B (LaMarch Tr.) at 207-09. Moreover, despite the misrepresentations on his résumé, Plaintiff also lacked a college degree—much less a post-graduate degree. *See id.* at 14, 196. Finally, Plaintiff's performance at TSP—while adequate for his Director of Administration/Rockefeller Center position—certainly was not "exceptional." *See* Exh. A ¶ 19; Exh. G; *see also* Exh. R (Speyer Tr.) at 43 (Plaintiff's performance was "mediocre").

The candidate ultimately hired by TSP (Sean Sullivan), by contrast, had extensive experience in asset management of real estate portfolios for several top Wall Street firms, in-depth knowledge of real estate investment analysis and value enhancement strategies, and a Masters degree in Real Estate from New York University (3.8 GPA), on top of substantial

property management experience. *See* Exh. K. Under these circumstances, TSP's decision to hire Mr. Sullivan cannot be said to raise an inference of discrimination against Plaintiff.

### 3. Other Employees Terminated By TSP

Lastly, Plaintiff tries to establish a *prima facie* case by listing the names of 20 TSP employees over the age of 40 who allegedly have been terminated in the New York Region from the "mid-1990s" until present. *See* Exh. A ¶¶ 33-62. This effort, too, fails.

As an initial matter, terminations of employees other than a plaintiff are not relevant to a plaintiff's age discrimination claim. *See Haskell v. Kaman Corp.*, 743 F.2d 113, 121 (2d Cir. 1984) (where insufficient to show pattern of discrimination, evidence regarding the termination of other employees "was not relevant to the question of whether [plaintiff] was terminated for age-related reasons").[6]

Moreover, Plaintiff admittedly could not provide *any evidence* that these former employees were terminated because of age. In fact, Plaintiff admitted that a number of them were *not* terminated on the basis of age, and he even personally terminated one for poor performance. *See* Exh. B (LaMarch Tr.) at 327-29, 345-47, 390-91. In almost every instance, Plaintiff's claims are based on nothing more than speculation and hearsay.[7] *See* Exh. B (LaMarch Tr.) at 313-16, 322-24, 328, 335-40, 345-47, 351-53, 359-64, 376, 383-86, 390-92, 400-03, 410-13, 422, 431-32, 442-48, 439, 455, 460-62, 466-67, 471, 485-86. Plaintiff admitted

---

[6] To the extent Plaintiff's allegations with respect to former TSP employees could be construed to allege a discriminatory policy or practice of age discrimination, Plaintiff has failed to state any cognizable claim. In order to establish a pattern or practice, a plaintiff must present evidence showing that unlawful discrimination and harassment was TSP's standard operating procedure—*i.e.*, of a "repeated, routine, or of a generalized nature." *Internationl Bhd. of Teamsters v. United States*, 431 U.S. 324, 336, 360 (1977). Here, Plaintiff failed to introduce any evidence establishing that TSP has a policy or practice of terminating other employees because of their age. To the contrary, the record reveals that TSP has strict policies and procedures prohibiting discrimination. *See* Exhs. S (handbook policy) and T (relevant excerpts of anti-harassment training policy, complaint procedure, and certificate of completion signed by Plaintiff (completed just over a month before his termination)).

[7] Although Plaintiff alleges to have overheard one scant comment from his supervisor concerning Todd Knoebel, he, in fact, admitted that Mr. Knoebel's termination was not discriminatory. *See* Exh. A (LaMarch Tr.) at 345, 347.

that many of the individuals were terminated due to downsizing, or that he had no evidence that they ever were replaced. *See id.* at 341, 347, 349, 355, 372, 381, 387, 393, 416, 450-51, 480-81. Plaintiff also acknowledged that many of those he cited worked in different buildings and departments than Plaintiff and for different TSP managers than those who terminated Plaintiff, such that Plaintiff had limited information regarding the basis for their terminations. *See id.* at 310-11, 334, 343, 380, 383, 398, 435, 440. Moreover, Plaintiff acknowledged that TSP hired several of these employees when they were in their fifties and sixties, and in at least two instances, their job duties were assumed by individuals in their sixties, further belying an inference of age discrimination. *See id.* at 344, 364, 383-84, 389-90, 398-400, 416, 472. He also admitted that he was aware that several of them had performance issues. *See id.* at 336-37, 422, 440-41, 460.

Plaintiff's allegations also lack the necessary statistical context. *See Haskell*, 743 F.2d at 121 (sample size of ten terminations over eleven-year period was too small to permit inference of discrimination); *Pitre v. Western Elec. Co.*, 843 F.2d 1262, 1268 (10th Cir. 1988), *aff'd in part & rev'd in part*, 975 F.2d. 100 (10th Cir. 1992) (sample size of twenty-four people was too small to produce meaningful statistics). With nearly 400 non-union employees in New York alone, of course – and as Plaintiff admitted – TSP also has terminated employees under the age of 40 over the nine-year period at issue. *See* Exh. B (LaMarch Tr.) at 491; Exh. U (Affidavit of Michael Butler ("Butler Aff.")) ¶¶ 4, 6. Notably, there is no evidence that any of the 20 individuals listed by Plaintiff ever filed a charge with the EEOC or any other agency or tribunal alleging any type of discrimination, or utilized TSP's internal complaint procedures to voice a concern of discrimination. *See* Exh. U (Butler Aff.) ¶ 5. *See also* Exh. B (LaMarch Tr.) at 317-18, 326, 330, 340-41, 355-56, 369, 381, 386, 395, 402-03, 414-15, 429, 435, 439, 448-49, 456-57, 463-

64, 469, 475, 484-85.  Particularly under these circumstances, Plaintiff's conclusory allegations concerning these individuals thus clearly are insufficient to defeat summary judgment.  *See Tomney v. Int'l Ctr. for the Disabled*, 357 F. Supp. 2d 721 (S.D.N.Y. 2005) (conclusory allegations that defendant purportedly fired a disproportionate high number of employees over the age of 40 do not defeat summary judgment).

B.    PLAINTIFF HAS NOT DEMONSTRATED THAT TSP'S BASIS FOR DISCHARGE WAS PRETEXTUAL

Even had Plaintiff been able to establish his *prima facie* case, summary judgment still would be appropriate, as TSP has offered a clear, non-discriminatory basis for his discharge: the elimination of Plaintiff's Director of Administration/Rockefeller Center position.  *See Roge*, 257 F.3d at 169; *Tarshis*, 211 F.3d at 37; Exh. C (Norton Tr.) at 123, 205-06; Exh. D (Madden Tr.) at 7, 11, 15-16.  Plaintiff has not shown that this job elimination was a "pretext" for discrimination against Plaintiff.  For this reason as well, Plaintiff's Amended Complaint should be dismissed.

As Plaintiff acknowledges, his Director of Administration position was eliminated as part of a restructuring of TSP's New York property management operations.  As stated in his Amended Complaint, "TSP allegedly created a . . . position, entitled Regional Property Manager, *which subsumed Plaintiff's then existing position of Director of Administration/Rockefeller Center*."  Exh. A ¶¶ 23 (emphasis added), 26.  *See also* Exh. B (LaMarch Tr.) at 171-72; Exh. N (listing "downsizing" as reason for leaving TSP).  His termination was consistent with TSP's broader consolidation of jobs in New York, which has eliminated various other positions in the property management group over the past several years.  *See* Exh. B (LaMarch Tr.) at 171-73, 268-70, 277-78; Exh. V (November 1, 2000 email by LaMarch listing nine property management positions absorbed by existing personnel).

Plaintiff has not offered any evidence of pretext. He has not offered evidence challenging the fact that his prior position was eliminated, and has not offered any evidence to call into question the reallocation of responsibilities that cost him his job. He has not challenged the *bona fides* of the qualifications given to the search firm for the new "New York Regional Property Manager" position, nor could he. In short, nothing in the termination decision is sufficient to demonstrate pretext.

II.    PLAINTIFF CANNOT DEMONSTRATE A HOSTILE WORK ENVIRONMENT

Plaintiff's "hostile work environment" claim also fails for two independent reasons. First, Plaintiff has failed to establish a "hostile" environment as a matter of law. Second, in any event, Plaintiff failed to avail himself of TSP's internal complaint procedures for reporting such alleged discrimination, thus precluding suit.

A.    NO SHOWING OF "HOSTILE ENVIRONMENT"

In order to establish a hostile work environment claim, a plaintiff must show that he was subjected to a workplace "permeated with discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of [plaintiff's] employment and create an abusive working environment." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003). Plaintiff's claims fall woefully short of this standard.

Plaintiff's Amended Complaint does not allege any facts that would support a workplace "permeated" with discriminatory conduct. In fact, Plaintiff admitted that, other than the alleged remark by Madden, *no one* at TSP discriminated against him while he was at TSP. *See* Exh. B (LaMarch Tr.) at 166-67. Moreover, in his deposition, Plaintiff could not identify any acts that contributed to a hostile environment or the terms and conditions of employment this conduct served to alter. Indeed, the only support Plaintiff purported to allege for his hostile work

15

environment claim was the fact that several employees over the age of 40 were terminated from TSP during a nine-year period from 1996 to present. *See* Exh. B (LaMarch Tr.) at 486-87. As discussed in Section I(A)(3), *supra*, Plaintiff has no evidence that these terminations were discriminatory.

B.     PLAINTIFF'S CLAIMS ARE BARRED

Moreover, Plaintiff failed to avail himself of TSP's internal mechanisms for reporting instances of alleged harassment. Where an employer has an anti-harassment policy, and an employee fails to avail himself of that policy, the employee is precluded from suing the employer for harassment. *See Burlington Indus., v. Ellerth*, 524 U.S. 742, 766 (1998).

Here, TSP has a strict, well-publicized Non-Discrimination and Anti-Harassment Policy, as fully set forth in the employee manual provided to all employees. *See* Exh. S at 4-5 (handbook policy). The policy prohibits "any form of unlawful employee harassment" or discrimination, and strongly urges employees to report all incidents of discrimination, harassment, or retaliation, according to its complaint procedures. *See id.* at 4. Plaintiff admitted that he was aware of these policies and procedures, and even completed an anti-discrimination and anti-harassment training program at TSP shortly before leaving TSP. *See* Exh. B (LaMarch Tr.) at 295-97, 302-05; Exh. T. Nevertheless, Plaintiff failed to utilize TSP's complaint procedures to report an alleged "hostile" environment or act. *See* Exh. B (LaMarch Tr.) at 302. Under well-settled law, Plaintiff thus cannot now seek to assert such a claim against TSP. *See Burlington Indus.*, 524 U.S. 742, 766 (1998).

16

III.   PLAINTIFF'S CLAIM FOR RETALIATION FAILS AS A MATTER OF LAW

Plaintiff alleges that TSP made disparaging remarks about him in retaliation for filing his discrimination claims, and that these alleged remarks have "adversely impacted and will impact" him in the future. *See* Exh. A ¶¶ 56-73. Here again, Plaintiff's claims fail for two independent reasons. First, TSP has not engaged in any conduct that could be deemed "retaliatory" in nature. Second, Plaintiff has not suffered any adverse employment action as required to establish a retaliation claim.

A.   NO "RETALIATORY" CONDUCT EXISTS

To establish a *prima facie* case of retaliation, an employee must show, *inter alia*, that a defendant has committed a retaliatory act connected to his employment. *See Terry*, 336 F.3d at 141 (*prima facie* case requires a causal connection). *See also Gadsden v. Jones Lang LaSalle Americas, Inc.*, 210 F. Supp. 2d 430 (S.D.N.Y. 2002) (granting summary judgment where there was no evidence that former employer caused plaintiff's termination). Here, Plaintiff has failed to do so.

Plaintiff alleges that more than six months after he filed his EEOC charge, TSP Senior Managing Director Robert Speyer placed a telephone call to Adam Hochfelder, then a principal at Max Capital, and made disparaging remarks about Plaintiff. *See* Exh. A ¶¶ 56-59. But Plaintiff has admitted – both in his deposition and to this Court – he has absolutely *no evidence* that Mr. Speyer placed such a call. *See* Exh. B (LaMarch Tr.) at 240; Exh. Q at 20-22. In fact, in uncontested testimony, Mr. Speyer has vigorously denied these allegations. *See* Exh. R (Speyer Tr.) at 33. Plaintiff's naked allegations to the contrary are insufficient to survive summary judgment. *See Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999) ("Where . . . there is no admissible evidence that the statements of the former

17

employer caused or contributed to the rejection by the prospective employer, the plaintiff has failed to present a prima facie case [of retaliation].").

Next, Plaintiff alleges that Mr. Speyer retaliated against him at a meeting with Mr. Hochfelder, where *Mr. Hochfelder* (but *not* Mr. Speyer) allegedly made derogatory comments about Plaintiff. *See* Exh. A ¶¶ 68-71. At his deposition, Mr. Speyer made clear that he refused to comment on Plaintiff at this breakfast meeting.[8] *See* Exh. R (Speyer Tr.) at 21, 27. This evidence is uncontradicted.

Finally, Plaintiff alleges that nine months after he filed his EEOC charge, Michael Norton mentioned the fact of the charge to Michael Tucker, a third-party security contractor. *See* Exh. A ¶¶ 62-63. According to the allegation, Mr. Norton made this remark after Mr. Tucker raised Plaintiff's name during a luncheon between the two men. *See id.* ¶ 63.

It is undisputed that Mr. Tucker is *neither* an employee of Max Capital—*nor* Plaintiff's employer. *See* Exh. A ¶ 62; Exh. B (LaMarch Tr.) at 183. As Plaintiff admits, Mr. Tucker is an independent, third-party contractor. *See id.* Moreover, Mr. Norton's comment clearly is not actionable on its face. It was a benign, factually accurate statement made after Mr. Tucker mentioned Plaintiff's name.

In sum, Plaintiff cannot make a *prima facie* claim of retaliation. The claim thus should be dismissed.

---

[8] Moreover, the breakfast meeting between Mr. Hochfelder and Mr. Speyer occurred thirteen months after Plaintiff filed his EEOC charge – a gap far too long to permit an inference of retaliation. *See* Exh. A ¶¶ 56-59, 62-63, 66-67, 70. The passage of several months or more between a protected activity and an alleged adverse employment action negates an inference of retaliation. *See Gorman-Bakos v. Cornell Co-op Extension.*, 252 F.3d 545, 553 (2d Cir. 2001). *See also Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (no causation where three months elapsed between protected activity and adverse action); *Velasquez v. Goldwater Mem. Hosp.*, 88 F. Supp. 2d 257, 264 n. 6 (S.D.N.Y. 2000) ("making comments about an employee four months after her termination does not constitute adverse employment action").

B.     NO ADVERSE EMPLOYMENT ACTION EXISTS

A plaintiff asserting a retaliation claim also must demonstrate the occurrence of an adverse employment action to establish a *prima facie* case. *See Terry*, 336 F.3d at 141. To be actionable, an employer's conduct must create a "materially adverse change in the terms and conditions of [a plaintiff's] employment." *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir. 1999); *Ruggieri v. Harrington*, 146 F. Supp. 2d 202, 216 (E.D.N.Y. 2001). Examples of adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished responsibilities, or other indices that might be unique to a particular situation." *Ruggieri*, 146 F. Supp. 2d at 215. "Not every unpleasant matter short of discharge or demotion creates an action for retaliatory discharge." *Richardson*, 180 F.3d at 466. A court must determine whether the challenged employment action in the case reaches the level of "materially adverse." *See id.*

Here, *as Magistrate Mann already has found*, Plaintiff has not suffered any adverse employment action. *See* Exh. W (Order of Justice Mann, dated October 28, 2004) at 6-7. As Plaintiff himself has acknowledged in his deposition, he has not been terminated, demoted, disciplined, transferred, or subjected to any other material or tangible adverse employment action by his current employer:

> Q:     [Y]ou haven't been demoted?
> A:     No.
> Q:     I think you said you hadn't been disciplined?
> A:     No.
> Q:     They didn't tell you to drop the suit?
> A:     No.
> Q:     They didn't move you to a smaller office?
> A:     No.
> Q:     You kept the same title?
> A:     Yes.

Q:     Your salary certainly hasn't gone down since that time?
A:     No.

                        *        *        *

Q:     So all in all, in terms of your performance and feedback, it seems to be pretty much smooth sailing over there since you've been there?
A:     Yes. Pretty much.
Q:     Anything that has not been smooth in terms of discipline or anything of that nature?
A:     No.
Q:     Anything that you would say hasn't been smooth sailing?
A:     No. Everything is fine.

Exh. B (LaMarch Tr.) at 114, 254-56.

Indeed, Plaintiff has fared extremely well since leaving TSP. He has received at least two positive employment reviews from Max Capital since joining the firm. *See* Exhs. O and P. He also received a $60,000 bonus in November or December 2003 – more than four months after the luncheon between Mr. Norton and Mr. Tucker and more than seven months after the alleged telephone call from Mr. Speyer. *See* Exh. B (LaMarch Tr.) at 518-19. Subsequently, in January 2004, Plaintiff received a $16,000 raise, from $190,000 to $206,000. *See id.* To this date – more than 26 months from the earliest alleged "retaliatory" incident and at least 19 months after the most recent alleged incident – there remains *no evidence* of any adverse employment action suffered by Plaintiff.[9]

In his Amended Complaint, Plaintiff alleges that he has suffered "reputational" injury as a result of TSP's conduct. *See* Exh. A ¶¶ 61, 73. But the record fails to support such a claim. Asked in his deposition if he had any evidence that his reputation has suffered as a result of

---

[9] Plaintiff also appears to have made misrepresentations to this Court regarding Mr. Hochfelder's current affiliation with Max Capital. Plaintiff continues to represent to the Court that Adam Hochfelder is a principal at his current employer. *See, e.g.,* Exh. A ¶ 56; Exh. Q at 3-4 (notably, stating "my client's former, I mean present employer," when referring to Max Capital). Yet TSP recently discovered numerous news articles and publications stating that, as of November 2004, Max Capital was renamed as Monday Properties and that Mr. Hochfelder *is no longer a principal of either Max Capital or Monday Properties. See* Exh. X (news articles). Monday Properties' website provides further evidence that Plaintiff is currently employed by Monday Properties—not Max Capital—and that Mr. Hochfelder is a *not* a principal there. *See* Exh. Y (Monday Properties' website lists Plaintiff as "Director of

comments made by employees of TSP, Plaintiff conceded that he had "no evidence" of such reputational injury. *See* Exh. B (LaMarch Tr.) at 506-08. With respect to the comment made by Mr. Norton to Mr. Tucker, Plaintiff admittedly was *unaware of it* until deposing Mr. Norton in this action on August 31, 2004 – at least a year after the remark at issue was made. *See* Exh. Q (1/5/05 Hearing Tr.) at 9-10. Similarly, Plaintiff admits that he did not even know about the breakfast meeting involving Mr. Speyer, Mr. Tucker, and Mr. Hochfelder until October 2004, nine months after the meeting occurred. *See id.* Obviously, if not even *Plaintiff* is aware of allegedly retaliatory comments absent the civil discovery process, there can be no showing of "reputational" damage cognizable by law.

IV.     PLAINTIFF CANNOT RECOVER PUNITIVE, LIQUIDATED, OR
        COMPENSATORY DAMAGES

        Contrary to Plaintiff's allegations, even if his claims could survive a motion for summary judgment, he cannot recover punitive damages under the ADEA or the NYSHRL. *See Townsend v. Exchange Ins. Co.*, 196 F. Supp. 2d 300, 306 (W.D.N.Y. 2002). Moreover, Plaintiff has not adduced any evidence to support a claim that TSP acted with "malice" or "reckless indifference" in fostering discrimination, and thus cannot set forth a claim for punitive damages under the NYCHRL. *See Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 102 (2d Cir. 2001). *See also Kolstad v. Am. Dental Assoc.*, 527 U.S. 526, 545-46 (1999) (recognizing employer's good-faith steps to prevent discrimination as defense to a punitive damages claim). To the contrary, as Plaintiff testified under oath, TSP adopted strict anti-discrimination and anti-harassment policies, provided employee education training concerning these policies, and posted its zero-tolerance policy prohibiting discrimination and harassment in its employee handbook. *See* Exh. B

---

Property Management" but omits Mr. Hochfelder as associated with Monday Properties). Mr. Hochfelder apparently has not even been in a position to retaliate against Plaintiff since at least November 2004.

(LaMarch Tr.) at 295-97, 303-09.  Accordingly, summary judgment should be granted

dismissing Plaintiff's request for punitive damages.

Summary judgment also is appropriate with respect to Plaintiff's claim for liquidated

damages.  Plaintiff has not adduced any evidence that TSP "either knew or showed reckless

disregard for the matter of whether its conduct was prohibited by the ADEA." *Whitten v. Cross

Garage Corp.*, No. 00 Civ. 5333 (JSM) (FM), 2003 WL 21744088, at *4 (S.D.N.Y. July 9, 2003)

(citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128 (1985)).  TSP thus should be

granted summary judgment with respect to this claim.

Finally, summary judgment should be granted with respect to Plaintiff's claim for

compensatory damages.  While Plaintiff's "Prayer for Relief" requests compensatory damages,

his Amended Complaint does not contain allegations supporting a claim of emotional distress,

and Plaintiff's deposition testimony similarly does not support such a claim.[10]  *See* Exh. B

(LaMarch Tr.) at 527-30.  Therefore, Plaintiff is not entitled to compensatory damages in any

event.

---

[10] Plaintiff claimed to have gained weight in the months after his discharge, but admittedly had no evidence linking this weight gain to his discharge. *See* Exh. B (LaMarch Tr.) at 528-29.  He claimed his blood pressure also increased in the months after his discharge, but admitted he learned of this only at a routine medical exam and had no basis to link this higher blood pressure to his discharge. *See id.* at 527-28.  Plaintiff further has indicated that he will not be presenting any medical testimony at trial to support a compensatory damages claim, and did not produce any such evidence in discovery. *See* Exh. Z (Letter of Plaintiff dated April 30, 2004).

## CONCLUSION

For the reasons set forth above, Defendant TSP's Motion for Summary Judgment should be granted in all respects.

Respectfully submitted,

Dated: New York, New York
      July 15, 2005

AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P.

By: _Richard J. Rabin_

Richard J. Rabin (RR 0037)
Lori J. Pennay (LP 8856)
Akin Gump Strauss Hauer & Feld, LLP
590 Madison Avenue
New York, NY 10022
Telephone: (212) 872-1000

Attorneys for Defendant Tishman Speyer Properties, L.P.

23