UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
        |
ARTHUR LAMARCH,        |
        |
        Plaintiff,        |    NOT FOR PUBLICATION
        |    **MEMORANDUM & ORDER**
    -against-        |
        |    03 CV 5246 (CBA)
TISHMAN SPEYER PROPERTIES, L.P.,        |
        |
        Defendant.        |
        |
------------------------------------------------------X

AMON, UNITED STATES DISTRICT JUDGE

      Before the Court is a report and recommendation ("R&R") by the Honorable Roanne L. Mann recommending that the Court grant a motion for summary judgment filed by defendant Tishman Speyer Properties, L.P. ("TSP") in this employment discrimination suit. Having carefully reviewed *de novo* those portions of the R&R to which LaMarch has objected, the Court hereby adopts the thorough and well-reasoned R&R as the opinion of the Court and grants the motion for summary judgment.

**I.    Background**

      A fuller recounting of the factual history underlying this case is available in Magistrate Judge Mann's R&R. In brief, the relevant facts include these: LaMarch first began working for TSP in 1979, as a project accountant. In 1992, he was terminated as a result of corporate downsizing. Four years later, in 1996, he was persuaded to rejoin the firm as Director of Administration for the firm's share of Rockefeller Center. Over the next few years, LaMarch received four positive annual evaluations and a number of salary increases and bonuses. On

1

May 17, 2002, LaMarch was terminated. He was 56 years old. On May 22, 2002, TSP hired 35 year old Sean Sullivan to fill a position which included LaMarch's former responsibilities. LaMarch filed a complaint with the Equal Employment Opportunity Commission in 2002 alleging that he was a victim of age discrimination, and initiated this suit on October 17, 2003.

## II. Standard of Review

Pursuant to Federal Rule of Civil Procedure 72(b) and 28 U.S.C. 636(b)(1), the Court reviews *de novo* each portion of Magistrate Judge Mann's R&R to which a specific objection has been made.

## III. Discussion

LaMarch has filed objections which are voluminous in length but with sparse citation to legal authority or record evidence. (See generally Pl.'s Objs., July 24, 2006.) Although the objections are numbered one through nine, LaMarch's numerous contentions are not as neatly organized as that scheme would suggest. Challenges to specific findings are scattered throughout the objections without any clear organizing principle. Several themes recur throughout the objections, such as alleged impermissible fact-finding by Magistrate Judge Mann, her bias, and the admissibility or sufficiency of LaMarch's evidence. The Court addresses these themes directly, rather than repeatedly in the specific context of each numbered objection.

### A. Summary Judgment Standard

LaMarch argues that Magistrate Judge Mann incorrectly applied the standard for summary judgment and engaged in impermissible credibility assessments and weighing of the evidence. This objection is without merit.

As the R&R states, Federal Rule of Civil Procedure 56(c) provides that a court shall grant

summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The moving party bears the initial burden of production. Once the moving party meets that burden, the burden shifts to the non-moving party to come forward with specific facts evidencing a genuine issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The Court draws all reasonable inferences and construes all ambiguities in favor of the non-moving party. Id. at 587.

The R&R characterized its inquiry as deciding "whether a reasonable fact-finder could conclude" that TSP's actions were motivated by age discrimination. (R&R 1, July 12, 2006.) LaMarch contends that this phrasing is incompatible with the summary judgment standard. (Pl.'s Objs. 2–3.) He is incorrect. If no reasonable trier of fact could find a fact in the nonmoving party's favor, then there is no genuine issue with regard to that fact and summary judgment may be granted with respect thereto. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a *reasonable* jury could return a verdict for the nonmoving party." (emphasis added)). Thus, the R&R does not misstate the applicable standard by introducing its inquiry as deciding whether a "reasonable fact-finder" could find in LaMarch's favor. Indeed, this is how LaMarch himself stated the standard in his memorandum of law opposing summary judgment. (Pl.'s Mem. Opposing Summary Judgment 35–36, Aug. 15, 2005 [hereinafter, Pl.'s Mem.].)

Importantly, this standard does not prohibit summary judgment whenever the nonmoving party brings forward any evidence, however slight, in its favor. Summary judgment may be granted if the evidence is not legally sufficient to allow a reasonable jury to find in the nonmoving party's favor, such that the Court would grant judgment as a matter of law. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) (stating standard for granting summary judgment is same as for granting judgment as a matter of law). As LaMarch acknowledges, the Supreme Court has held in the employment discrimination context that an employer would be entitled to judgment as a matter of law "if the plaintiff created *only a weak issue of fact* as to whether the employer's [proffered nondiscriminatory reason] was untrue and there was abundant and uncontroverted independent evidence that no discrimination has occurred." Id. at 148 (emphasis added).

Upon careful review of the R&R, it does not appear that the R&R ever deviates from this standard or resolves any issues of fact as to which there is genuine dispute. The Court has carefully reviewed each of LaMarch's allegations of impermissible factfinding, and finds the objections to be entirely without merit. In every instance, Magistrate Judge Mann concludes that there is no genuine dispute as to a material fact because the evidence is insufficient as a matter of law to support a finding in LaMarch's favor. The Court agrees.

### B. Burdens of Production and Persuasion

LaMarch argues that the R&R ignores the "shifting burdens of proof" in the three-part inquiry which McDonnell Douglas v. Green, 411 U.S. 792 (1973), applies to employment discrimination claims. LaMarch also argues that the R&R wrongly required him to meet a higher burden than defendant TSP. (Pl.'s Objs. 5.) These objections are without merit.

"McDonnell Douglas and subsequent decisions have established an allocation of the burden of production and an order for the presentation of proof in discriminatory-treatment cases." Reeves, 530 U.S. at 142 (quotation marks and ellipsis omitted). Under this scheme, the burden of production shifts between the parties, while the ultimate burden of persuasion remains at all times with the plaintiff. Id. at 143. The burden at first falls upon the plaintiff to establish a *prima facie* case of discrimination. Carrying this burden creates a presumption of discriminatory animus and shifts the burden to the employer to articulate a legitimate, nondiscriminatory reason for the complained-of action. Id.; McDonnell Douglas, 411 U.S. at 803. At that point, "the presumption of discrimination raised by the plaintiff's *prima facie* showing drops out of the picture," Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 203 (2d Cir. 1995) (quotation marks omitted), and the burden shifts back to the plaintiff to show that the employer's stated reason "was in fact pretext." McDonnell Douglas, 411 U.S. at 804. Contrary to LaMarch's objections, the R&R correctly states—and applies—each stage of this analysis, including the observation that the final step does not require the plaintiff to show that the employer's stated reason was entirely false, but only that unlawful discrimination was a motivating factor in the employment decision. (See R&R 15 (citing Holtz v. Rockefeller & Co., 258 F.3d 62, 78 (2d Cir. 2001).)

LaMarch's claim that the R&R required him to meet a higher burden than it required of TSP is based primarily on the higher number of pages the R&R devoted to discussing each party's proof. (See R&R 4–5 (complaining R&R spends "*one paragraph*" on defendant's burden but "*20 pages*" on plaintiff's evidence).) The R&R addressed TSP's legitimate nondiscriminatory reason for LaMarch's termination in approximately a page and a half, but spent nearly twenty pages discussing LaMarch's attempt to show that the reason was a mere

5

pretext and that discrimination motivated his termination. (Compare R&R at 14–15 with R&R at 15–31). The lengthier analysis does not reflect a higher burden. Rather, TSP articulated a straightforward nondiscriminatory reason for LaMarch's termination (a restructuring), while LaMarch's effort to carry his ultimate burden of persuasion was considerably more involved. Simply put, LaMarch's arguments presented more to discuss.

**C.    Defendant's Nondiscriminatory Reason**

LaMarch argues that there is a genuine issue of fact as to whether "Defendant's alleged legitimate nondiscriminatory reason for Plaintiff's discharge can be substantiated conclusively to meet its burden as a matter of law." (Pl.'s Objs. 13.) According to LaMarch, this genuine issue of fact arises because the record contains conflicting evidence as to when TSP first created a description of the position which Sean Sullivan was hired to fill. (Id.) TSP claims that the description contained in Defendant's Exhibit H was created in late 2001 or early 2002; LaMarch contends it was created later, and points out that the exhibit is undated. LaMarch argues that the R&R impermissibly resolves this disputed issue of fact by crediting only the testimony of TSP employees.

First, this objection misunderstands TSP's burden. The defendant's burden under the McDonnell Douglas framework is simply to come forward with evidence which, if believed, would allow a reasonable trier of fact to conclude that the employment decision was made for a legitimate nondiscriminatory reason. The burden "is one of production, not persuasion; it involves no credibility assessment." Reeves, 530 U.S. at 142. Thus, TSP did not need to "substantiate conclusively" its proffered reason for terminating LaMarch.

Second, the record clearly shows that TSP met its burden of production irrespective of

6

Exhibit H.[1]  TSP's explanation is supported by testimony from senior managers regarding the corporate restructuring, the termination of LaMarch, and the hiring of Sullivan.  (See, e.g., Pl.'s Ex. 6, Norton Tr. 35–48; Pl.'s Ex. 7, Madden Tr. 10–16, 25–26.)  If credited, this testimony would clearly allow a reasonable trier of fact to conclude that LaMarch was terminated for legitimate nondiscriminatory reasons.  LaMarch's contention that TSP did not meet this burden borders on the frivolous.

Finally, it appears that LaMarch has essentially conflated the second and third stages of the McDonnell Douglas analysis.  He repeatedly asserts that Magistrate Judge Mann improperly found that TSP "had" a legitimate nondiscriminatory reason for terminating LaMarch.  (Pl.'s Objs. 13–14.)  However, Magistrate Judge Mann found in this stage only that TSP had "presented" a nondiscriminatory reason for that action.  (R&R 15.)  LaMarch's attempts to discredit that reason, including his argument regarding the date when Defendant's Exhibit H was created, fall under the third of the McDonnell Douglas stages, in which the burden is on him to show that TSP's reason was pretextual and that discriminatory animus played a motivating role in his termination.  These arguments are simply irrelevant to whether TSP has met its burden of production in the second stage.  Thus, LaMarch is fundamentally mistaken when he argues that Magistrate Judge Mann could not properly "conclude that Defendant had met its burden of production at this stage of the McDonnell Douglas Corp. v. Green framework" and that she "should have stopped her analysis at this point" and recommended summary judgment be denied.  (Pl.'s Objs. 14.)   There is no genuine issue of fact as to whether TSP has satisfied its

---

[1]  In fact, the R&R does not refer to defendant's Exhibit H at all in connection with TSP's burden to come forward with a legitimate nondiscriminatory reason for LaMarch's termination.  (See R&R 14–15 (not mentioning Def.'s Ex. H).)

burden of production in the second stage of the McDonnell Douglas analysis.

**D.      Plaintiff's Burden**

LaMarch argues that the R&R fails to credit evidence in LaMarch's favor when it determines that LaMarch has failed as a matter of law to carry his burden of showing that TSP's proffered reason for terminating him was pretextual and that discrimination played a motivating role. In each instance, LaMarch's objection is without merit.

      1.   Whether LaMarch Knew of the Position

LaMarch asserts that the R&R finds "that Plaintiff knew about the new position of NYPRM and chose not to apply for it," and that this finding ignored LaMarch's testimony that he did not understand the nature of the position or that it would replace his own. According to LaMarch, "[t]here can be no clearer evidence of the Magistrate's deciding a credibility issue than this." (Pl.'s Objs. 6.) The Court disagrees. There is no genuine dispute that LaMarch knew that TSP was hiring for the NYPRM position and that he chose not to apply for it. (See, e.g., Def.'s Rule 56.1 Statement ¶ 13; LaMarch Dep. Tr. 174–76.) The dispute centers over whether Mr. LaMarch believed that the position merely replaced Brendan Connolly's or understood that it would also absorb his own responsibilities. The R&R acknowledges this dispute, and does not attempt to resolve it. (See, e.g., R&R 19 (noting LaMarch claims TSP misinformed him of nature of position).) Nor does the R&R rely in any material way upon LaMarch's failure to apply for the position.[2]

---

[2] The R&R does distinguish Hnat v. Chicago Pneumatic Toll Co., No. 91-CV-563, 1992 WL 345075 (N.D.N.Y. 1992) on the basis that "plaintiff knew of the opening yet chose not to apply for it." (R&R 20 & n.17.) However, that case from the Northern District of New York is not controlling and need not be distinguished. Moreover, the Hnat court's holding—that the employer's failure to inform the plaintiff of a job opening added to a "[s]uspicion of

2. When the NYPRM Job Description Was Created

LaMarch also argues that the R&R's conclusion that the job description for the NYPRM position was created in 2001 is incorrect because evidence shows that it was not created until October 2002, after Sullivan was hired, and was revised in December 2002 after LaMarch filed his EEOC complaint. LaMarch's arguments on this point are inconsistent, and without merit.

First, LaMarch has adduced no evidence that the job description was not created until October 2002. TSP's Exhibit H is a job description for the NYPRM position on the letterhead of Equinox, an executive search firm. Michael Norton, a senior TSP executive, testified in his deposition that he created this description and sent it to Equinox when that firm was hired by TSP, which was prior to LaMarch's termination and Sean Sullivan's hiring. (Def.'s Ex. D, Norton Tr. 39, Aug, 31, 2004.) LaMarch has not come forward with any specific facts to rebut this testimony, except to point out that Exhibit H is undated. Nor does the Court's own independent review of the record reveal any evidence contradicting TSP's account of when Exhibit H was created. LaMarch thus has not satisfied his burden of coming forward with specific facts evidencing a genuine issue for trial on this point. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

Second, LaMarch's own memorandum of law opposing summary judgment acknowledges that Norton prepared a written description of the NYPRM position and forwarded it to Equinox when that firm was hired at the end of 2001. (See Pl.'s Mem. 28 ("However, Mr. Norton prepared and forwarded to Equinox Partners a written description for the new job, but the

---

discrimination" supporting the plaintiff's *prima facie* case—is not dispositive of the issue in this case, which is whether plaintiff has adduced sufficient evidence to withstand summary judgment on the third of the McDonnell Douglas stages.

last time he saw that description was when TSP hired Equinox Partners[.]").) There is no reason not to believe that Exhibit H is that description.

3. LaMarch's Qualifications

LaMarch argues that the R&R wrongly "concludes he was not qualified to fill the allegedly new position of New York Regional Property Manager." (Pl.'s Objs. 9.) The R&R, however, never reaches such a conclusion. Instead, the R&R simply finds that LaMarch had not established that his credentials "are so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over" LaMarch. (R&R 20 (quoting Byrnie v. Town of Cromwell Bd. of Educ., 243, F.3d 93, 103 (2d Cir. 2001)).) This Court's independent review of the record confirms that conclusion.

LaMarch also argues that the fact that Sean Sullivan was terminated within a year of his hiring raises a question of fact as to whether Sullivan was the best-qualified candidate. (Pl.'s Objs. 10.) Sullivan's performance after being hired, however, is irrelevant to whether TSP reasonably believed him to be the best qualified candidate for the position when he was hired. Moreover, Sullivan's termination is not inconsistent with TSP's argument that it underwent several reorganizations, including the one in which LaMarch was terminated, in an attempt to shed layers of management. Thus, Sullivan's termination within a year of his hiring does not undermine TSP's stated nondiscriminatory reason for terminating LaMarch.

4. Admissibility of "Pattern" Evidence

The R&R concludes that none of LaMarch's "pattern-and-practice" evidence would be admissible at trial, and thus may not be considered on a motion for summary judgment. (R&R

29.) Specifically, the R&R concludes that LaMarch's statistical evidence regarding the terminations of employees older than 40 would be inadmissible because it is not supported by any expert analysis, and that LaMarch's anecdotal testimony would be inadmissible "speculation and hearsay." (R&R 30–31.) LaMarch argues that his testimony "concerning other employee[s'] complaints is not hearsay, as it is not offered for the truth of the contents of their statements, but only for the purpose that such statements were made." (Pl.'s Objs. 17.) LaMarch also argues that he "is a fact witness to the pattern and practice evidence that he offers" and that his testimony regarding his own observations is not hearsay.[3] (Id.)

The Court finds the R&R's treatment of LaMarch's proposed evidence to be correct. LaMarch's testimony regarding other employees' statements about age discrimination is clearly offered for the truth of the matter asserted: that TSP engaged in unlawful age discrimination. Indeed, it is not clear what relevance the testimony would have if offered only "only for the purpose [of showing] that such statements were made." (Id.) His testimony regarding his own perception of a "pattern" of terminating older employees is mere conclusory speculation unsupported by admissible evidence. LaMarch's purported "statistics" regarding the number of TSP employees over 40 who were terminated between 1996 and 2003 are inadmissible and meaningless, for the reasons stated in the R&R. (See R&R 29–30 (citing, e.g., Zenni v. Hard Rock Cafe Int'l, Inc., 903 F. Supp. 644, 653 (S.D.N.Y. 1995).) Without contextual information such as the number of TSP employees over forty during that period and the termination rate of employees under forty, no rational jury could draw any inference regarding age discrimination

---

[3] LaMarch apparently does not object to the R&R's conclusion that his statistical evidence would not be admissible because it is not supported by any expert analysis. (See R&R 29; Pl.'s Objs. 17 (objecting only to R&R's conclusion re. anecdotal testimony).

11

from the minimal data LaMarch presents. Cf. Raskin v. Wyatt Co., 125 F.3d 55, 67–68 (2d Cir. 1997) (finding expert's statistical report not probative of discrimination because analysis flawed). This is true whether the evidence is considered in support of LaMarch's individual disparate treatment claim, a pattern-and-practice disparate treatment claim, or a disparate impact claim.[4] See Robinson v. Metro-North Commuter R.R., 267 F.3d 147, 158 n.5 (comparing role of statistics in individual and pattern-and-practice disparate treatment cases); id. at 160 (noting "statistics must reveal that the disparity is substantial or significant" in disparate impact case (quotation marks omitted)).

5. Stray Remark

The R&R dismisses Thomas Madden's December 28, 2001 statement that LaMarch might not "have the gas to continue" as a "stray remark" which was entirely neutral and did not support an inference of age discrimination. (See R&R 24–28.) While conceding that the remark may seem neutral "[i]n isolation," LaMarch argues that the remark is probative of discrimination when considered in the context of his termination and the terminations "of older employees in 2001 that continued into 2002." (Pl.'s Objs. 12.) The Court disagrees.

---

[4] LaMarch's memorandum opposing summary judgment and his objections to the R&R both mention a disparate impact claim. (See Pl.'s Mem. 27; Pl.'s Objs. 17, 19–21.) However, his amended complaint does not contain such a claim, and the arguments in his memoranda focus entirely on intentional discrimination rather than the unintentional treatment that underlies a disparate impact claim. See Robinson, 267 F.3d at 160 ("[D]isparate impact claims are concerned with whether employment policies or practices that are neutral on their face and were not intended to discriminate have nevertheless had a disparate effect on the protected group."). To the extent LaMarch pursues a disparate impact claim, the Court finds it to be without merit as a matter of law for the reasons stated in the R&R and for the additional reason that LaMarch has adduced no facts establishing any actual disparate impact or any causal relationship between a facially neutral practice or policy and an alleged disparate impact. See id. (discussing elements of disparate impact claim).

Although verbal comments may be evidence of employment discrimination, so-called "stray remarks" are insufficient to establish such a claim, even when made by a decisionmaker. Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 468 (2d Cir. 2001). In evaluating whether a comment is "stray," a court should consider "(1) who made the remark...; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark...; and (4) the context in which it was made." (R&R 25.) Even if a remark would ordinarily be deemed "stray" under this analysis, however, when "other indicia of discrimination are properly presented, the remarks can no longer be deemed 'stray,' and the jury has a right to conclude that they bear a more ominous significance." Danzer v. Norden Systems, Inc., 151 F.3d 50, 56 (2d Cir. 1998). In this case, there are no other significant indicia of discrimination and the remark must be dismissed as "stray" for substantially the reasons stated in the R&R.

6. Conclusion

For the reasons stated in the R&R and the reasons discussed above, the Court concludes that LaMarch has failed to produce evidence from which a reasonable finder of fact could conclude that age discrimination played a role in TSP's decision to terminate his employment. Considering the record as a whole, the evidence in LaMarch's favor is so slight as to be insufficient as a matter of law to support a judgment in his favor. Therefore, the Court grants summary judgment to TSP with respect to LaMarch's claim of disparate treatment.

**E.     Hostile Work Environment**

Magistrate Judge Mann's R&R concludes that LaMarch's hostile work environment claim is procedurally barred because LaMarch did not pursue TSP's internal complaint procedures and is in any event without merit. (R&R 35–39.)

As an initial matter, the Court notes that LaMarch's testimony regarding other employees' statements about alleged age discrimination, while inadmissible hearsay when introduced to establish the truth of those statements, see Part II.D.4, supra, would be admissible if introduced to show only that the statements were made to LaMarch and that he somehow experienced a hostile work environment as a result. Similarly, while his testimony regarding the terminations of other employees is inadmissible to establish a pattern or practice of discrimination, portions of that testimony might be admissible for other purposes, such as to establish the timing and frequency of the office chatter he describes.

The theory underlying LaMarch's hostile work environment claim is difficult to discern from his papers. He appears to argue that TSP created a hostile work environment by systematically terminating older employees, and that the surviving employees' reaction to the terminations disrupted the workplace. (See Pl.'s Mem. 52–54 ("Each time TSP fired an older employee, the conversations started, and that interfered with the employees' work performance, who were concerned and the other employees, who commiserated with them." [*sic*].) However, since the Court has already determined that LaMarch cannot show that TSP engaged in such a pattern of discriminatory firings, see Part II.D, supra, the predicate for this hostile work environment claim cannot be established and the claim must fail.[5]

In any event, LaMarch's evidence is insufficient as a matter of law to allow a reasonable jury to find the hostile work environment claim in his favor. As the R&R notes, the "hostile

---

[5] Moreover, it is not clear that these circumstances—where the disruption to the workplace is caused by employees' reactions to alleged discriminatory treatment, rather than by direct harassment—make out a viable hostile work environment claim. The Court has assumed for purposes of deciding this motion for summary judgment, however, that such a claim can be made.

14

work environment" test has both objective and subjective components: "[a] work environment will be considered hostile if a reasonable person would have found it to be so and if the plaintiff subjectively so perceived it." Mormol v. Costco Wholesale Corp., 364 F.3d 54, 58 (2d Cir. 2004) (quotation marks omitted). LaMarch's evidence cannot establish either point. Rather than showing that TSP's workplace was "permeated with discriminatory intimidation, ridicule, and insult," Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quotation marks omitted), his evidence shows only that office discussions with older employees became a distraction from "useful work time," as employees would commiserate whenever an older employee was terminated. (LaMarch Tr. 487; see also Pl.'s Objs. 22–24.) In his Objections, LaMarch elaborates on his claim by stating "[b]y a hostile work environment, Mr. LaMarch meant the subtle and systematic termination of older employees with the dwindling survivors worrying about their jobs." (Pl.'s Objs. 23; Pl.'s Mem. 52.) No reasonable finder of fact could conclude from the record in this case that TSP had so poisoned the workplace atmosphere that it had altered the conditions of LaMarch's employment and created an abusive working environment. See Harris, 510 U.S. at 21 (stating standard for hostile work environment claim under Title VII). In addition, apart from a single conclusory statement, LaMarch's own testimony shows that he did not subjectively experience the workplace to be hostile. (See, e.g., LaMarch Tr. 486, R&R 37 n.32.) Therefore, the Court concludes that his hostile work environment claim fails on its merits as a matter of law.

The Court construes LaMarch's discussion of his failure to pursue TSP's internal greivance procedures to argue futility: pursuing an internal greivance would be futile because the hostile work environment was created by, and with the knowledge of, the most senior TSP

15

management. (See Pl.'s Objs. 24–25.) Having found that the hostile work environment claim fails on its merits, the Court declines to decide whether a rational jury could find LaMarch's belief regarding futility reasonable and excuse his failure to pursue TSP's internal remedies.

**F.     Retaliation**

LaMarch's objections regarding the R&R's treatment of his retaliation claim are entirely without merit. (Pl.'s Objs. 27–32.) LaMarch cannot pursue a retaliation claim on the basis of a phone call that Adam Hochfelder allegedly received from an unnamed party at TSP, because LaMarch's testimony regarding what Hochfelder told him about that phone call is inadmissible hearsay and LaMarch has offered no other evidence regarding the call.[6] LaMarch cannot pursue a retaliation claim on the basis of either of the other two incidents he alleges because the facts of those incidents show no retaliation whatsoever. Moreover, LaMarch's own testimony states that he has suffered no cognizable injury or harm, including reputational harm, except for a slight chilling of his relationship with one of his current supervisors—which is not actionable. (See R&R 44–47.)

LaMarch also contends that Magistrate Judge Mann's prior rulings denied him essential discovery relating to his retaliation claim. In particular, he believes he is entitled to review a memorandum sent by Robert F. Speyer to TSP's in-house counsel. LaMarch is not entitled to review the memorandum because it is protected by the attorney-client privilege, as Magistrate Judge Mann ruled. (Order 8–9, Oct. 29, 2004 (Mann, M.J.).) LaMarch also objects that prior rulings by Magistrate Judge Mann and this Court "have denied Plaintiff an opportunity for

---

[6] LaMarch's request to reopen discovery to allow him to depose Hochfelder was denied by Magistrate Judge Mann on the grounds that LaMarch had long known of the significance of Hochfelder's testimony and had presented no valid excuse for failing to depose him during the discovery period. (Order 4–5, Oct. 29, 2004 (Mann, M.J.).) The Court affirmed that ruling in its Order of January 6, 2005, for substantially the reasons cited by Magistrate Judge Mann.

material inquiry and deposition's of TSP's chief executive officer and two other non-party witnesses." (Pl.'s Objs. 28.) LaMarch was afforded an opportunity to depose TSP's CEO, Robert Speyer, and did in fact depose him. Magistrate Judge Mann simply denied LaMarch's request to reopen that deposition, and the Court affirmed her ruling. (Order 3–4, Oct. 29, 2004 (Mann, M.J.); Order, Jan. 6, 2005 (Amon, J.).) LaMarch has presented no argument as to why the Court should revisit those rulings. Nor has LaMarch presented any argument as to why Magistrate Judge Mann's denial of his last-minute request to reopen discovery to depose two non-party witnesses was incorrect. The Court previously affirmed that ruling and does not revisit it now. (Order, Jan. 6, 2005 (Amon, J.).)

### G.     Punitive Damages

LaMarch objects to the R&R's conclusion that he may not obtain punitive damages under the New York City Human Rights Law, on the ground that TSP's malice or reckless indifference are questions of fact for a jury to decide. (Pl.'s Objs. 33–34.) LaMarch's objection is without merit, for substantially the reasons stated in the R&R. (See R&R 47–49.) In any event, since LaMarch cannot show that he was subject to intentional discrimination or retaliation, he is not entitled to damages of any sort, punitive or otherwise.

### H.     Magistrate Judge Mann's Alleged Bias

Throughout his objections, LaMarch argues that the R&R should be disregarded in its entirety because it is the product of bias Magistrate Judge Mann allegedly holds against LaMarch. (See, e.g., Pl's Objs. 11 (accusing R&R of "biased analysis" tailored to achieve a "desired result"); Id. at 22 ("The animus towards Plaintiff permeates the Report. Such a comment [by Magistrate Judge Mann] is gratuitously vindictive...."); Id. at 26 (stating Magistrate Judge Mann's discovery rulings against LaMarch are "relevant and revealing"); Id. at 31

17

(describing Magistrate as "unhappy" with recent Supreme Court decision because it "reinforces" LaMarch's case).) There is no evidence that Magistrate Judge Mann's recommendation is the result of any bias against LaMarch. See Liteky v. United States, 510 U.S. 540, 555 (1994) ("[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.").

LaMarch also argues that Magistrate Judge Mann has operated under a conflict of interest because one of her former law clerks currently works for the firm representing TSP, Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"). In a letter sent after the objections were filed, LaMarch's counsel informed the Court that he had recently discovered this alleged conflict and suggested that he would have brought a recusal motion had he known of it earlier. (Letter, John V. Henry to Court, July 20, 2006.) He asks the Court to vacate the R&R and Magistrate Judge Mann's Order of October 29, 2004 regarding discovery. This request is denied.

TSP's counsel at Akin Gump has informed the Court that the former law clerk in question, Adam Spiewak, works in Akin Gump's Los Angeles office and has had no involvement in the case while at the firm. Magistrate Judge Mann has issued an Order stating that Mr. Spiewak's clerkship ended in February 2003, eight months before this case was filed, and that Magistrate Judge Mann had not heard from Mr. Spiewak since early 2003 and did not know that he was employed by Akin Gump until she received the letter from LaMarch's counsel. (Order, July 26, 2006 (Mann, M.J.).) She had previously believed that Mr. Mr. Spiewak had joined a different firm in Los Angeles, based on information given to her by Mr. Spiewak's former co-clerk. (Id.)

In response, LaMarch's counsel sent another letter to the Court, stating that Lamarch "is alarmed that Mr. Spiewak was Magistrate Judge Mann's law clerk approximately 8 months prior to commencement of this lawsuit, that Mr. Spiewak invited Magistrate Mann to his wedding in 2003 and that Mr. Spiewak's co-clerk informed Magistrate Mann of the identity of the law firm that Mr. Spiewak joined after his clerkship." (Letter para. 3, John V. Henry to Court, Aug. 1, 2006.) LaMarch's counsel argues that "any adversary" under these circumstances "would be concerned...if his opposing counsel has an associate who is publicized proudly on the firm's website that he 'served as a law clerk to the Honorable Roanne L. Mann, U.S. District Court for the Eastern District of New York (2002-2003).'" (Id. at para. 5.) He asks the Court to investigate

> whether Mr. Spiewak's co-clerk spoke with Mr. Spiewak or anyone [from] Defendant's law firm after Mr. Spiewak's departure; was the co-clerk still with Magistrate Mann at the time of commencement of this lawsuit; did Mr. Spiewak's co-clerk ever work on matters in this lawsuit; how [many] times has the co-clerk spoken to Mr. Spiewak since he joined Defendant's law firm; and did any of Judge Mann's or the Court's law clerks ever speak to Defendant's attorneys or representatives in reference to this lawsuit.

(Id. at para. 3.) This unfounded request for a fishing expedition is denied.

The simple fact is that this case had not even been filed when Mr. Spiewak was the Judge's law clerk, and in any event he has done no work on the case since he has been with the firm. There is no evidence of a conflict of interest. Indeed, LaMarch has not even alleged facts from which bias or a genuine conflict of interest could be inferred. Simply because a former clerk has subsequently become a member of a firm does not disqualify a judge or magistrate from hearing any case in which that firm appears. That lone circumstance does not make the proceeding one in which the judge's "impartiality might reasonably be questioned." 28 U.S.C. §

455. Indeed, if it did, the judges in this district would have very little work to do since they would be precluded from sitting on all cases involving the major law firms in New York, which employ former law clerks of almost every judge in this Court. Nor are there any other circumstances in this case that could give rise to an inference of partiality. Thus, there is no basis for recusal and LaMarch's request to vacate Magistrate Judge Mann's Order and R&R is denied.

### IV. Conclusion

The Court has found no merit to any of LaMarch's objections to the R&R. The Court therefore adopts the R&R as the opinion of the Court, as supplemented by the above discussion. Accordingly, TSP's motion for summary judgment is granted. The Clerk of the Court is directed to enter judgment accordingly and to close the case.

SO ORDERED.

Dated: Brooklyn, New York
August 7, 2006

Carol Bagley Amon
United States District Judge